UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
JONATHAN ZERMENO,                         )
                                          )   No. C16-1540RSL
                    Plaintiff,            )
       v.                                 )
                                          )   ORDER GRANTING IN PART
NORTH PACIFIC FISHING, INC.,              )   DEFENDANT'S MOTION FOR
                                          )   SUMMARY JUDGMENT
                    Defendant.            )
_____)

This matter comes before the Court on "Defendant's Motion for Summary Judgment." Dkt. # 10. Plaintiff asserts claims under the Jones Act (for negligence) and under general maritime law (for unseaworthiness, maintenance, and cure) based on injuries he suffered on a fishing vessel owned by defendant.[1] Defendant seeks dismissal of all of the claims asserted.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S.

---

[1] Plaintiff has apparently abandoned his wage claim.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Taken in the light most favorable to plaintiff, the non-moving party, the facts giving rise to plaintiff's claims are as follows:[2]

Plaintiff was working on a vessel assembly line processing fish in high seas. The man at the next station in line tossed a bag of frozen fish toward a chute leading down to the freezer. There were already bags of fish in the chute area, and the newest arrival fell onto the floor, then onto plaintiff's left leg, causing him injury. Plaintiff was given ice and an anti-inflammatory on board, then referred to the local clinic for medical care. He did not return to the vessel. A series of orthopedic, neurologic, and general medicine appointments were inconclusive regarding the cause of plaintiff's ankle weakness and pain.

On January 19, 2017, plaintiff's doctor referred him for another neurological examination. Defendant authorized the examination and guaranteed payment. Nevertheless,

---

[2] The Court has not considered the unsworn declarations plaintiff submitted on September 26, 2017.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -2-

defendant stopped paying maintenance and cure as of March 31, 2017. On April 10, 2017, plaintiff was evaluated by an independent medical examiner at defendant's request. In a report dated April 21, 2017, the examining doctor concluded that there was nothing objectively wrong with plaintiff, that his condition was fixed and stable, and that he had reached maximum medical cure. Meanwhile, the neurologist to whom plaintiff had originally been referred declined to offer a second opinion in the case, and defendant authorized an examination by a different neurologist on May 4, 2017. There is no evidence that the examination ever took place or that plaintiff received any injury-related treatment after January 19, 2017.

**A. MAINTENANCE AND CURE**

Under general maritime law, a shipowner has a duty to provide maintenance (a per diem allowance for room and board) and cure (nursing and medical expenses) to a seaman who "becomes ill or is injured while in the service of the ship." Vella v. Ford Motor Co., 421 U.S. 1, 3 (1975). Justice Story articulated the underlying policy of maintenance and cure as follows:

> Seamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour. They are generally poor and friendless, and acquire habits of gross indulgence, carelessness, and improvidence. If some provision be not made for them in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment.... On the other hand, if these expenses are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will watch over their health with vigilance and fidelity. He will take the best methods, as well to prevent diseases, as to ensure a speedy recovery from them. He will never be tempted to abandon the sick to their forlorn fate; but his duty, combining with the interest of his owner, will lead him to succor their distress, and shed a cheering kindness over the anxious hours of suffering and despondency. Beyond this, is the great public policy of preserving this important class of citizens for the commercial service and maritime defence of the nation.

Harden v. Gordon, 11 F. Cas. 480, 483 (C.C.D. Me. 1823) (Case No. 6,047). "[L]ogically and historically the duty of maintenance and cure derives from a seaman's dependence on his ship,

not from his individual deserts, and arises from his disability, not from anyone's fault." Farrell v. U.S., 336 U.S. 511, 515-16 (1949).

In the case at hand, defendant immediately recognized its duty to provide maintenance and cure for the injuries plaintiff suffered on board its vessel and made appropriate payments through March 31, 2017. It now seeks a summary determination that the duty expired on or before that date. In this context, where the shipowner unilaterally discontinued payments, there is a presumption that maintenance and cure continues and it is the shipowner's burden to prove by a preponderance of the evidence that plaintiff reached maximum cure on or before March 31, 2017. See Hedges v. Foss Maritime Co., 2015 WL 3451347, at * 5 (W.D. Wash. May 29, 2015). Defendant has not established this fact as a matter of law. As of March 31, 2017, plaintiff remained under the care of Dr. Surratt and had been referred to a neurologist. Although there were complications in scheduling an appointment, Dr. Surratt's office continued to pursue treatment as late as May 9, 2017, and defendant authorized evaluation and treatment for neurologic-related weakness at that time. At the time it discontinued the maintenance payments, there was no medical determination or factual basis from which defendant could reasonably conclude that maximum medical cure had been achieved. To the extent defendant relies on the opinion of the IME, the examination report was not generated until April 21, 2017, and its findings could not have justified a termination of benefits three weeks earlier. In addition, there is no indication that plaintiff's treating physician agrees with the IME's assessment given his continuing attempts to schedule a consult. The duty to pay maintenance and cure ends when "maximum possible cure has been effected, and the seaman's physical condition has become fixed beyond further improvement." Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 532 (9th Cir. 1962). "When there are ambiguities or doubts [related to maintenance and cure], they are resolved in favor of the seaman." Vaughan v. Atkinson, 369 U.S. 527, 532 (1962). The record does not support a finding that plaintiff reached maximum medical cure, as a matter of

law, on or before March 31, 2017.

In the alternative, defendant argues that plaintiff has forfeited any right he had to maintenance and cure by failing to pursue the neurologic assessment recommended by Dr. Surratt. While it is true that a seaman must act with reasonable diligence to ascertain the nature of his illness and seek treatment, plaintiff did so here. He was in the midst of scheduling another examination when defendant stopped paying maintenance and, presumably, cure. A shipowner may not withhold payments, thereby forcing a seaman to work or to refrain from seeking care, then claim an advantage from the fact. See Vaughan, 369 U.S. at 533 ("It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings. This would be a dreadful weapon in the hands of unconscionable employers . . . ."); Permanente S.S. Corp. v. Martinez, 369 F.2d 297, 301-02 (9th Cir. 1966) (considering reasonableness of the seaman's neglect, or even outright refusal, to utilize medical care offered by shipowner when determining whether a forfeiture occurred). There is at least an issue of fact regarding the reasonableness of plaintiff's failure to pursue the neurological consult after defendant declared that its obligation to pay seaman's benefits had come to an end.

**B. UNSEAWORTHINESS**

Under general maritime law, defendant had an obligation to provide a seaworthy vessel, one reasonably fit for its intended use. Ribitzki v. Canmar Reading & Bates, Ltd. Partnership, 111 F.3d 658, 664 (9th Cir. 1997). Plaintiff argues that the F/T AMERICAN #1 was unseaworthy because it lacked a railing to hold bags of frozen fish on the counter when they were tossed into the chute area. Plaintiff's claim is not based on his crew mate's poor aim or some other transitory condition that arose at sea. Rather, plaintiff argues that, in the absence of a railing, the chute area was unreasonably dangerous for its known and intended use of holding

stacked bags of frozen fish in the Bering Sea. Although plaintiff is not entitled to a perfect work space, he is entitled to a space that is reasonably suited for its intended use. <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539, 550 (1960). Plaintiff has identified a modification that may have prevented an entirely predictable occurrence, namely that a 40-80 pound bag of frozen fish stacked two or three high on a counter top in close proximity to the crew might dislodge and fall in rough seas. Defendant makes no effort to show that such modification was impracticable or would otherwise impede the work flow on the assembly line. Plaintiff is entitled to present his theory of unseaworthiness to the jury for a determination whether the work space was reasonably fit for the known activities and conditions the crew experienced.

Plaintiff also argues that the vessel was unseaworthy because the crew was not trained to stop placing bags in the chute area when the space was already occupied. There is no evidence to support this claim. In his deposition testimony, the only reference to the training given to the baggers of fish is that they are trained to use a throwing motion to get the bags to the chute. Dkt. # 13-2 at 9. The only other reference to training suggests that the risks of working in the Bering Sea, in huge waves that cause everything to sway, was part of the crew's training. Dkt. # 13-2 at 8. This part of plaintiff's claim is based on nothing more than speculation and the fact that an accident happened. A reasonable fact finder cannot conclude, based on the existing record, that the crew was incompetent or otherwise unfit for their tasks.

**C. JONES ACT**

To recover on his Jones Act claim, plaintiff must show that the shipowner or one of its agents "was negligent and that this negligence was a cause, however slight, of his injuries." <u>Ribitzki</u>, 111 F.3d at 662. If plaintiff is able to show that the fish processing area was not reasonably fit for its intended use, he may also be able to establish negligence. The elements of Jones Act negligence are duty, breach, notice, and causation. As noted above, the shipowner has a duty to provide seamen with a safe place in which to work, and if plaintiff is able to show that

the lack of a protective railing in the chute area made the assembly line unsafe, the jury would likely find in his favor regarding breach, notice, and causation.

**D. REQUESTS FOR SANCTION**

Plaintiff has not cited any authority or support for his request for costs and fees incurred in responding to this motion. The request is denied.

**E. EXTENSION OF DISCOVERY DEADLINE**

Pursuant to Fed. R. Civ. P. 16(b)(4), case management deadlines established by the Court "may be modified only for good cause and with the judge's consent." The case management order in this case likewise states "[t]hese are firm dates that can be changed only by order of the Court, not by agreement of counsel or the parties. The Court will alter these dates only upon good cause shown . . . ." Dkt. # 9 at 2. Rule 16 was amended in 1983 to require scheduling orders that govern pre-trial as well as trial procedure. The purpose of the change was to improve the efficiency of federal litigation: leaving the parties to their own devices until shortly before trial was apparently costly and resulted in undue delay. Under the new rule, once a case management schedule issues, changes will be made only if the movant shows "good cause."

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met with the diligence of the party seeking the extension."
> Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment) . . . .

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). See also Zivkovic v. S. Cal. Edison Co., 302 F3d 1080, 1087-88 (9th Cir. 2002) (where plaintiff failed to "demonstrate diligence in complying with the dates set by the district court," good cause was not shown).

The case management deadlines related to discovery are set sequentially to ensure that the parties can prepare for trial in an orderly manner. In this case, discovery closed on July 9, 2017, and all motions seeking to compel discovery had to be filed approximately three weeks before

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT         -7-

that date. Plaintiff argues that these deadlines need to be extended because defendant never provided dates for deposing key witnesses, instead "sandbagging" plaintiff by discussing settlement, then filing a motion for summary judgment. Dkt. # 13 at 20. There is no evidence to support this extraordinary accusation. The record contains only a statement from plaintiff's counsel that he would like to depose three or four crewmen (Dkt. # 13-2 at 84) and a single inquiry from defense counsel regarding the possibility of settling the case (Dkt. # 13-2 at 77). There is no evidence that plaintiff did anything more than put defendants on notice that he intended to take depositions: there was no request for dates, no notices, and no motion to compel. A vague hope or belief that the case will settle does not excuse the failure to comply with the deadlines established by the Court. Plaintiff has not demonstrated diligence. His request for an extension of the discovery deadline is denied.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's unseaworthiness claim based on the incompetence or lack of training of the crew is DISMISSED. Plaintiff's other claims may proceed to trial.

Dated this 26th day of October, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge